UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| AMERICAN RELIABLE INSURANCE COMPANY et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES COMPANY OF AMERICA. <br><br> Defendants. | No. 3:19–cv–469-JRG-CRW <br><br> CONSOLIDATED LEAD |

**PLAINTIFFS' COMBINED MOTION FOR:
(1) STAY OF PROCEEDINGS AND
<u>(2) ENTRY OF FINAL JUDGMENT UNDER RULE 54(b)</u>**

Subrogation Plaintiffs (plaintiffs in the five remaining consolidated actions listed below) move for: (1) stay of all proceedings in these five remaining consolidated actions while the Individual Plaintiffs' appeal this Court's dismissal of their Failure to Warn Claim; and (2) entry of final judgment, under Fed. R. Civ. P. 54(b), from the Court's November 24, 2020 Memorandum Opinion and Order dismissing the Subrogation Plaintiffs' Fire Management Claims; permitting Subrogation Plaintiffs to simultaneously appeal that dismissal in parallel with the Individual Plaintiffs' Appeal. Plaintiffs also request a hearing with the Court for the disposition of this Motion.

These requests would maximize judicial economy by providing immediate appellate guidance regarding both the Individual Plaintiffs' and the Subrogation Plaintiffs' dismissed claims, thereby expediting ultimate resolution of all the consolidated actions.

As grounds, Subrogation Plaintiffs state:

1. "On November 28, 2016, the Chimney Tops 2 Fire ("Fire"), the largest wildfire in the Great Smoky Mountains National Park's ("Park") history, left the Park's boundaries, burned the surrounding areas, and led to tragic losses of life and significant property damage." *American Reliable Ins. Co. v. United States*, 502 F. Supp. 3d 1266, 1270 (E.D. Tenn. November 24, 2020).

2. The Park is controlled and operated by Defendant United States of America ("Defendant"). After the Fire, various groups of plaintiffs sued Defendant under the Federal Tort Claims Act ("FTCA"), seeking compensation for Defendant's negligence in handling the Fire. *Am. Reliable*, 502 F. Supp. 3d at 1270. *See* 28 U.S.C. §§ 1346(b). A total of eleven such lawsuits ("Lawsuits") were filed between 2018 and 2020, all in the U.S. District Court for the Eastern District of Tennessee. Defendant is the sole defendant in each Lawsuit.

3. In six Lawsuits, the Plaintiffs are individual persons ("Individual Plaintiffs"). Starting with the earliest-filed Lawsuit, the six "Individual Lawsuits" are:

- *Reed et al. v. United States*, No. 3:18-cv-201 (former lead consolidation case for all eleven Lawsuits)
- *Anculle et al. v. United States*, No. 3:18-cv-308
- *Adkins et al. v. United States*, No. 3:18-cv-310
- *Vance et al. v. United States*, No. 3:19-cv-283
- *Barnes et al. v. United States*, No. 3:19-cv-296
- *Abbott et al. v. United States*, No. 3:20-cv-149.

4. The remaining five Lawsuits were brought by insurers ("Subrogation Plaintiffs") subrogated to the Fire claims of their insureds. Starting with the earliest-filed such Lawsuit, the five "Subrogation Lawsuits" are:

- *Am. Reliable Ins. v. United States*, No. 3:19–cv–469 (current lead consolidation case)
- *State Farm v. United States*, No. 3:19-cv-470
- *United Services Auto. Ass'n. v. United States*, No. 3:19-cv-472
- *Allstate v. United States*, No. 3:19-cv-474
- *Auto-Owners Ins. v. United States*, No. 3:19-cv-478.

Each action brought by Subrogation Plaintiffs concerns a single, indivisible claim

2

stemming from multiple losses. This motion is brought by all Subrogation Plaintiffs.

5. Each Lawsuit included "Fire Management Claims"—alleging the Defendant negligently failed to: (1) properly monitor the Fire; (2) comply with certain command-structure requirements in handling the Fire; and (3) follow certain fire management protocols with respect to the Fire. *See, e.g.*, *Am. Reliable*, 502 F. Supp. 3d at 1275-79, 1282-84; *Reed et al. v. United States,* 426 F. Supp. 3d 498, 502 (E.D. Tenn. 2019). Each Lawsuit also included an additional "Failure to Warn Claim"—a cause of action alleging that Defendant negligently failed to warn certain third-party groups about Fire-related information. *See*, *e.g.*, *Am. Reliable*, 502 F. Supp. 3d at 1279-82.

6. Defendant moved to dismiss all the Lawsuits on the ground that the discretionary function exception to the FTCA renders Defendant immune from suit for the Fire ("Discretionary Function Motion"). *See* 28 U.S.C. § 2680(a).

7. Individual Plaintiffs then abandoned their Fire Management Claims. *Reed*, 426 F. Supp. 3d at 503 (addressing the *Reed*, *Anculle*, and *Adkins* Lawsuits); *Vance et al. v. United States*, 2019 WL 7041500, at *1 (E.D. Tenn. Dec. 20, 2019) (addressing the *Vance* and *Barnes* Lawsuits); and *Abbott v. United States*, 518 F. Supp. 3d 1220, 1222-23 (E.D. Tenn. Feb. 9, 2021) (addressing the *Abbott* Lawsuit). However, the Subrogation Plaintiffs continued to pursue their Fire Management Claims. *See Am. Reliable*, 502 F. Supp. 3d at 1275-79, 1282-84.

8. The Lawsuits proceeded as related cases before the same judge, which is now (and has for some time been) this Honorable Court. *Am. Reliable*, 502 F. Supp. at 1271. Because the Lawsuits were filed on various dates between 2018 and 2020, initially they did not all run on the same timeline. Consequently, the Court adjudicated the Discretionary Function Motion more than once.

9. In the Individual Plaintiffs' Lawsuits, the Court adjudicated the Discretionary Function Motion in three separate opinions: first in *Reed*, 426 F. Supp. 3d 498 (addressing *Reed*,

3

*Anculle*, and *Adkins*); next in *Vance*, 2019 WL 7041500 (addressing *Vance* and *Barnes*), and finally in *Abbott*, 518 F. Supp. 3d 1220 (issued in February 2021, and addressing *Abbott* alone). All three of those opinions denied Defendant's Discretionary Function Motion, thereby leaving the Individual Plaintiffs' Failure to Warn Claim intact. *See Reed*, 426 F. Supp. at 508-11; *Vance*, at *7-9; *Abbott*, 518 F. Supp. 3d at 1225-28.

10. In the Subrogation Lawsuits, the Court adjudicated the Discretionary Function Motion in an opinion dated November 24, 2020 in *Am. Reliable*, 502 F. Supp. 3d 1266 ("November 2020 Opinion"). The November 2020 Opinion denied the Discretionary Function Motion with respect to the Subrogation Plaintiffs' Failure to Warn Claim (*id*. at 1279-82) but granted that motion with respect to the Subrogation Plaintiffs' Fire Management Claims (*id*. at 1275-79, 1282-84).

11. Thus, by February 2021 (the date of *Abbott*, 518 F. Supp. 3d 1266), the Court had resolved the Discretionary Function Motion in four separate opinions, collectively addressing all eleven Lawsuits, with the result that each Lawsuit was proceeding forward on only the Failure to Warn Claim.

12. In June 2021, the Court determined that the eleven Lawsuits presented common questions of law and fact, and therefore consolidated them under Fed. R. Civ. P. 42. *See* ECF No. 112 in *Reed*, 3:18-cv-201 ("Consolidation Order"). The Consolidation Order bifurcated the consolidated Lawsuits into two phases. In Phase I, the parties would try the Failure to Warn Claim elements of duty and breach which were common to all parties. Thereafter, in Phase II the parties would select bellwether Plaintiffs and try the elements of causation and damages. Final judgment would then be entered in the bellwether cases, and any subsequent appeal would "provide the Parties with information necessary to continue litigating the remaining cases and Plaintiffs." ECF No. 112 in *Reed*, 3:18-cv-201. The Court entered a Scheduling Order for Phases I and II. ECF No. 113 in *Reed*, 3:18-cv-201.

13. Also in June 2021, Defendant filed two more motions to dismiss. The first motion sought dismissal of the Individual Plaintiffs' Lawsuits under 28 U.S.C. § 2675(a), which requires potential plaintiffs to present FTCA claims to the appropriate federal agency before filing suit against the United States. ECF No. 110 in *Reed*, 3:18-cv-201 ("Presentment Motion"). The Presentment Motion argued that the Court lacked jurisdiction over the Individual Plaintiffs' Failure to Warn Claim because the Individual Plaintiffs omitted that claim from their pre-Lawsuit presentment of claims to the federal agency. *Id.* The second motion sought dismissal of all eleven Lawsuits under 28 U.S.C. § 2680(h); which disallows the FTCA's waiver of sovereign immunity for claims arising out of governmental misrepresentations. ECF No. 109 in *Reed*, 3:18-cv-201 ("Misrepresentation Motion"). The parties finished briefing both Motions in July and August 2021. *See* ECF Nos. 128, 129, 141, & 142 in *Reed*, 3:18-cv-201.

14. In September 2021, the Court stayed proceedings in the consolidated Lawsuits, pending the Court's ruling on the Motions. ECF No. 155 in *Reed*, 3:18-cv-201. Due to the stay, over a dozen scheduled depositions were canceled or postponed, and other pretrial work was suspended. ECF No. 120 in *Am. Reliable*, 3:19-cv-469.

15. On February 28, 2022, the Court issued its Memorandum Opinion and Order resolving the pending Motions. *Reed v. United States*, 2022 WL 601924 (E.D. Tenn. Feb. 28, 2022) ("February 2022 Opinion"). The February 2022 Opinion denied the Misrepresentation Motion but granted the Presentment Motion. *Reed*, 2022 WL 601924, at *8-11. The February 2022 Opinion agreed with the Individual Plaintiffs that "[t]here is … a strong argument that" the presentment requirement "should no longer be applied as jurisdictional," but held that the requirement remains jurisdictional under existing Sixth Circuit precedent, and thus this Court lacks jurisdiction over the Individual Plaintiffs' Failure to Warn Claim. *Id.*, at *11.

16. The February 2022 Opinion severed the Individual Lawsuits from the consolidated

5

Subrogation Lawsuits, and then dismissed the Individual Lawsuits. *Id*., at *11-12. The dismissal was a final judgment. ECF No. 161 in *Reed*, No. 3:18-cv-201. That left the five Subrogation Lawsuits to proceed with the Failure to Warn Claim, under the caption of the *American Reliable* Lawsuit (the first-filed Subrogation Lawsuit). The Court then lifted its September 2021 stay and entered an amended Scheduling Order for the Subrogation Lawsuits. ECF No. 117 in *Am. Reliable*, 3:19-cv-469.[1]

17. In March 2022, the Individual Plaintiffs moved to alter or amend the February 2022 Opinion. ECF No. 163 in *Reed*, 3:18-cv-201.[2] On May 31, 2022 the Court issued an order denying that motion. *Reed v. United States*, 2022 WL 2132509 (E.D. Tenn. 2022) ("May 2022 Order"). The May 2022 Order again "acknowledged that [the Individual] Plaintiffs have a legitimate argument that the [presentment] requirement of 28 U.S.C. § 2675(a) is no longer jurisdictional," but concluded the requirement is still jurisdictional under current Sixth Circuit precedent. *Reed*, 2022 WL 2132509, at *1-2. Furthermore, the May 2022 Order also held that this Court lacks power to address the Individual Plaintiffs' arguments that Defendant has waived (or is estopped from asserting) the presentment requirement. *Id*., at *3.

18. Meanwhile, in April 2022 Defendant and Subrogation Plaintiffs informed the Court that, despite previously exchanging written discovery, they had postponed depositions in order to avoid the risk of duplicative depositions posed by the potential results of the prior-pending motions to dismiss.[3] ECF No. 120 in *Am. Reliable*, 3:19-cv-469. In mid-May 2022, Subrogation Plaintiffs

---

[1] In April 2022 the Court extended the amended Scheduling Order's deadlines at the parties' request. ECF Nos. 118 & 119 in *Am. Reliable*, 3:19-cv-469.
[2] Briefing on the motion was completed in April 2022. ECF Nos. 164, 165, & 166 in *Reed*, 3:18-cv-201.
[3] This risk is discussed in this motion's Analysis section below. Due to the same risk, no depositions yet have been taken in these Lawsuits.

advised the Court that, absent the participation of Individual Plaintiffs, bellwether trials were no longer necessary. ECF No. 121 in *Am. Reliable*, 3:19-cv-469. (Subrogation Plaintiffs restated this position in June 2022, after the Court had issued the May 2022 Order. ECF No. 124 in *Am. Reliable*, 3:19-cv-469.)

19. Shortly after the May 2022 Order was issued, Subrogation Plaintiffs informed the Court they would seek leave to appeal the November 2020 Opinion's dismissal of their Fire Management Claims if the Individual Plaintiffs appealed the dismissal of their Failure to Warn Claim. Resolving both appeals contemporaneously would promote judicial economy and avoid unnecessary duplication of work. Furthermore, the clarification provided by such appellate rulings, would permit all parties and the Court to expeditiously finish litigating the entire dispute. *See* ECF No. 124 in *Am. Reliable*, 3:19-cv-469.

20. On June 10, 2022, the Individual Plaintiffs timely appealed the February 2022 Opinion and the May 2022 Order. The appeal is Case No. 22-5493 in the Sixth Circuit Court of Appeals ("Appeal").

21. On June 15, 2022, the Court held a status conference with Subrogation Plaintiffs and Defendant. Subrogation Plaintiffs requested a stay of the Subrogation Lawsuits during the Appeal, so that the Failure to Warn Claim is not litigated twice if Individual Plaintiffs win their Appeal. *See* June 15, 2022 Transcript, pp. 5-6. Defendant was unable to take a position on this request because the Solicitor General's office had not yet analyzed the situation, but agreed that litigating the Failure to Warn Claim twice (including re-deposing the same witnesses) would be undesirable. *Id*., p. 9.

22. Also at the same status conference, Subrogation Plaintiffs reiterated their desire to immediately appeal the November 2020 Opinion's dismissal of their Fire Management Claims. In addition to providing important appellate guidance regarding Individual Plaintiffs' Failure to Warn

7

Claim, a contemporaneous appeal of this Court's dismissal of Subrogation Plaintiffs' will further reduce the risk of future inconsistent trials and a multiplicity of appeals. *See* June 15, 2022 Transcript, p. 3. Defendant was not yet in a position to agree or disagree, but stated it wished to avoid multi-track litigation. *Id.*, pp. 10, 11, 16, 23.

23. After the status conference, the Court issued an order staying proceedings in these Subrogation Lawsuits until August 15, 2022, so that Defendant and Subrogation Plaintiffs may further confer on the issues discussed at the status conference, and prepare and file motions accordingly. ECF No. 127 in *Am. Reliable*, 3:19-cv-469.

24. Since June 15, 2022, Subrogation Plaintiffs have conferred among themselves and decided to file this motion. Subrogation Plaintiffs have informed Defendant of that decision, but Defendant was still unable to take a position one way or the other on the underlying issues.

## ANALYSIS

Subrogation Plaintiffs have two requests. First, they request a stay of all proceedings, including any selection of bellwether Plaintiffs, in the Subrogation Lawsuits until Individual Plaintiffs have completed their Appeal in Sixth Circuit Case No. 22-5493. Second, Subrogation Plaintiffs seek Rule 54(b) certification of the November 2020 Opinion's dismissal of their Fire Management Claims, so that Subrogation Plaintiffs may appeal that dismissal while the Individual Plaintiffs' conduct their Appeal. These requests would maximize judicial economy for the entire dispute between Defendant and all Plaintiffs.

**I. Judicial economy warrants staying all further proceedings before the trial court until the Sixth Circuit has resolved the Individual Plaintiffs' Appeal.**

A "District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones,* 520 U.S. 681, 706 (1997). "The power to stay proceedings is

8

incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel, and for litigants[.]" *FTC v. E.M.A. Nationwide, Inc.,* 767 F.3d 611, 626-627 (6th Cir. 2014). In evaluating a request for a stay, federal courts must "balance interests favoring a stay against interests frustrated by the action." *Cherokee Nation of Oklahoma v. United States,* 124 F.3d 1413, 1416 (Fed. Cir. 1997). Usually, the interest potentially frustrated by a stay of proceedings, is the Plaintiff's desire to have their claims adjudicated expeditiously. *Id.* To that end, a Court must balance the convenience of its own schedule against its "obligation to exercise jurisdiction timely in cases properly before it." *Id.* In this instance, the balance of competing factors is clear. Judicial economy warrants staying all proceedings regarding, Subrogation Plaintiffs' Failure to Warn Claim until the Sixth Circuit has ruled on the Individual Plaintiffs' Appeal.[4] Further, the parties whose interests may be frustrated by any resulting delay, the Subrogation Plaintiffs, are the ones requesting the stay. On that basis, it is plainly within the power of this Court to grant the stay pursuant to the interests of all parties.

At the June 15, 2022 status conference, all parties expressed concern about the prospect of duplicative litigation of the Failure to Warn Claim if the Subrogation Action moves forward and Individual Plaintiffs ultimately win their Appeal. During the conference, the Court also expressed sensitivity to that concern. June 15, 2022 Transcript, p. 27:1-4.

Those concerns are realistic. This Court's February 2022 Opinion and May 2022 Order acknowledge the legitimacy of Individual Plaintiffs' argument that the presentment requirement should no longer be jurisdictional – allowing that the Appeal has a reasonable chance of proceeding.

---

[4] During the June 15, 2022 status conference, the Court distinguished between staying proceedings within a case (i.e. staying discovery and other pretrial preparation) and staying the entire case itself (which would mean that motions could not be filed within the case). June 15, 2022 Transcript, p. 23:19-21, p. 30:9-15. Subrogation Plaintiffs would leave application of that distinction here to the Court's discretion. Henceforth this motion uses "stay" as shorthand for either concept.

9

If there is no stay, and if the Appeal results in reinstatement of Individual Plaintiffs' Failure to Warn Claim, then the Failure to Warn Claim will be litigated twice: once by Subrogation Plaintiffs and Defendants, and then again later by Individual Plaintiffs and Defendants. The same witnesses would be deposed twice, a second trial would occur regarding the Failure to Warn Claim (at which the same witnesses would testify again), and a second appeal would be brought from the result of the second trial. A stay would avoid this undesirable result by ensuring that the Failure to Warn Claim will be discovered, tried, and appealed just once. In short, a stay would allow re-consolidation of the Failure to Warn Claim which the February 2022 Opinion and May 2022 Order severed between the formerly consolidated Individual Plaintiffs and Subrogation Plaintiffs.

Further a stay of the bellwether selection process is particularly necessary pending resolution of the Individual Plaintiffs' appeals. As noted in this Court's Orders denying the Individual Plaintiffs' Motion to Alter or Amend, many of the Individual Plaintiffs' claims at least partially overlap with the Subrogation Plaintiffs' claims. (Reed, ECF 138, p.5). As a result, if this Court proceeded with bellwether trials for the indivisible insurance carrier claims, those rulings would inevitably raise difficult questions regarding issue preclusion when the Individual Plaintiffs return to this court following appeal. Consequently, moving forward with a bellwether selection process not only raises the specter of inconsistent future rulings – but also with prejudicing future litigants before this Court.

Conversely, there is no significant downside to the requested stay. Normally, a litigation stay would have the effect of delaying resolution of Subrogation Plaintiffs' Failure to Warn Claim. However, in this instance Subrogation Plaintiffs are requesting the stay in order to file their own appeal of the November 2020 dismissal of their Fire Management Claims. As a result, staying Subrogation Plaintiffs' Failure to Warn Claim during the Appeal is actually an advantage to the ultimate resolution of this litigation.

**II.**     **The Court should certify its dismissal of the Subrogation Plaintiffs' Fire Management**

**Claims as a final judgment under Fed. R. Civ. P. 54(b), so that Subrogation Plaintiffs may appeal the dismissal of their Fire Management Claims contemporaneously with Individual Plaintiffs' Appeal of the dismissal of their Failure to Warn Claim.**

Rule 54(b) states: "When an action presents more than one claim for relief … or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Under this rule, certification of an order as a final judgment has "two components: entry of final judgment as to one or more but fewer than all of the claims or parties; and determination that there is no just reason for delay." *Gavitt v. Born*, 835 F.3d 623, 638 (6th Cir. 2018).

A.  **The Fire Management Claims are separate from the Failure to Warn Claim**.
Under the first component, the dismissed claims must be based on "operative facts" which are different from the operative facts of the claim remaining before the district court. *Gavitt*, 835 F.3d at 638. Claims are not based on different operative facts if the claims are based on the same conduct by the defendant, even if the claims allege different theories of legal liability. *Lowery v. Fed Ex*, 426 F.3d 817, 821-22 (6th Cir. 2005).

Requiring different operative facts assures that the appellate court will not be faced with more than one appeal raising the same factual issues. *Id*. at 822. Relatedly, this test minimizes the risk that continued proceedings on the claim remaining before the district court will reopen the dismissed claims while they are up on appeal. *Gavitt*, 835 F.3d at 639.

The first component of the Rule 54(b) test is met here because the Failure to Warn Claim is based on different operative facts—different conduct by Defendant—than the Fire Management Claims. The Failure to Warn Claim is premised on Defendant's failure to notify certain third-parties about the Fire, while the Fire Management Claims arise from Defendant's separate conduct in failing to properly monitor and combat the Fire itself.

The November 2020 Opinion supports the conclusion that the operative facts for the Failure

11

to Warn Claim are different than those for the Fire Management Claims. The November 2020 Opinion described the actions and omissions underlying each claim, and those descriptions were of different acts and omissions. *See Am. Reliable*, 502 F. Supp. 3d at 1275 (failure to monitor the Fire), at 1279 (failure to notify others about the Fire), at 1282 (failure to utilize the Step-up Plan and to designate a Fire Duty Officer separate from the Fire Incident Commander), at 1283 (failure to use the Wildland Fire Decision Support System to guide and document Fire management decisions), and at 1284 (failure to use a Complexity Analysis checklist to order additional fire-fighting resources). Moreover, the November 2020 Opinion appropriately recognized that Defendant's acts and omissions should not be characterized as one unitary conduct. *Am. Reliable*, at 1275. Rather, "each challenged action or inaction" was discrete conduct which should not be grouped together with other acts or omissions. *Id*. Accordingly, the first component of the Rule 54(b) test is met here.

### B. In light of the Individual Plaintiffs' Appeal of their Failure to Warn Claim, there is no just reason to delay appeal from the dismissal of Subrogation Plaintiffs' Fire Management Claims.

The second component of the Rule 54(b) test—that there is no just reason to delay an appeal of the claims which have been dismissed—asks this Court to "determine whether the needs of the parties outweigh the efficiency of having one appeal at the conclusion of the case in its entirety." *Lowery*, 426 F.3d at 822 (internal quotation marks and citation omitted).[5] *Accord Gavitt*, 835 F.3d at 639 (the district court must "consider the interests of judicial administration as well as the equities of the parties"). Relevant factors include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought be made final; [and] (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims,

---
[5] This Court "must spell out its reasons for concluding that prompt review is preferable." *Id*.

12

expense, and the like.

*Gavitt*, 835 F.3d at 639.

In the ordinary Rule 54(b) situation, the Court would assess these factors as they bear on the choice between one appeal "at the conclusion of the case in its entirety" (on the one hand) and one appeal now and another appeal at the end of the case (on the other hand). But the circumstances here materially differ from the ordinary situation. The Consolidation Order did not envision just one appeal. As described above, it envisioned a first appeal of bellwether claims followed by resolution of the remaining claims *as based on the guidance provided by the first appeal*. ECF No. 112 in *Reed*, 3:18-cv-201. Furthermore, the Court's dismissal of Individual Plaintiffs' Failure to Warn Claim, coupled with the Court's dismissal of Subrogation Plaintiffs' Fire Management Claims, will engender at least two appeals. One of those appeals (the Appeal) already has been filed. The precise question here is when it makes the most sense—from the standpoint of judicial economy for the Sixth Circuit, this Court, witnesses, and the parties—to undertake the appeal regarding the Fire Management Claims: now, or not until after Subrogation Plaintiffs' Failure to Warn Claim has been resolved?

The Individual Plaintiffs' current Appeal presents a fortuitous opportunity to expedite resolution of all the Subrogation Plaintiffs' claims by undertaking the Firefighting Claim appeal now, while the Individual Plaintiffs' Appeal is already occurring. If the Sixth Circuit were to reinstate the Fire Management Claims now, then (assuming a stay of Subrogation Plaintiffs' Failure to Warn Claim during the Appeal, as discussed above) all the Subrogation Plaintiffs' claims would be resolved in one subsequent proceeding in this Court. If Individual Plaintiffs win their Appeal, then that single subsequent proceeding would be combined with the Individual Plaintiffs' Failure to Warn Claim.

Conversely, if the Sixth Circuit were to reject the Fire Management Claims now, then Defendant and Subrogation Plaintiffs would know sooner rather than later that those claims are permanently out of the case, thereby streamlining the overall dispute between them and making its

13

final resolution that much easier and quicker to achieve. For example, if the Sixth Circuit were to reject the Fire Management Claims now but Individual Plaintiffs win their Appeal, then the consolidated Lawsuits would be fully resolved by one subsequent proceeding regarding all Plaintiffs' Failure to Warn Claim. If the Sixth Circuit were to reject the Fire Management Claims and Individual Plaintiffs lose their appeal, then the consolidated Lawsuits would be fully resolved by one subsequent proceeding regarding Subrogation Plaintiffs' Failure to Warn Claim. Either scenario is more judicially economical than postponing appeal from the dismissal of the Fire Management Claims until after the Appeal and proceedings follow the Appeal.

In addition, there is no just reason to delay certification even under the scenario contemplated by the above-quoted multiple factor test which applies in an ordinary Rule 54(b) situation where (as described above) the primary concern is preventing more than one appeal based on the same facts. Because the Fire Management Claims are based on different operative facts than the Failure to Warn Claim, the first three factors favor certification of the Fire Management Claims. *See U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 596 (6th Cir. 2013) (discussing first three factors in a related manner; and granting certification); *Hermes v. Lubic*, No. 3:13-cv-416, 2017 WL 835185, at *1-2 (E.D. Tenn. March 2, 2017) (also discussing first three factors in a related manner; also granting certification). Moreover, once the Sixth Circuit has decided whether the FTCA's discretionary function exception applies to the Fire Management Claims, it would not be required "to consider th[at] same issue twice." *Sebelius*, 705 F.3d at 596.

The fourth Rule 54(b) factor is not relevant here. As for the fifth factor, judicial economy favors certification for the reasons already discussed. Based on those reasons, appeal now from dismissal of the Fire Management Claims likely would shorten the remaining lifespan of all the consolidated Lawsuits, thereby also favoring certification. *See Hermes*, at *2 (because the "actions complained of [in *Hermes*] occurred almost five years ago," the language of no-just-reason-for-delay

14

"is infused with a certain exigency"; here, the Fire occurred over 5½ years ago).

WHEREFORE the Subrogation Plaintiffs ask this Court to: (1) stay proceedings in these five remaining consolidated Lawsuits until the Appeal is done; and (2) enter final judgment, under Fed. R. Civ. P. 54(b), from the Court's November 2020 Opinion so that Subrogation Plaintiffs may appeal dismissal of their Fire Management Claims contemporaneously with the Individual Plaintiffs' Appeal.

July 26, 2022

Respectfully submitted,

/s/ *Mark S. Grotefeld w/permission by MJE*
*Counsel*

Mark S. Grotefeld, *pro hac vice*
**GROTEFELD HOFFMANN**
6034 West Courtyard Drive,
Suite 200
Austin, Texas 78730
mgrotefeld@ghlaw-llp.com

Amy L. Dvorak, *pro hac vice*
Emma L. Gaddipati, *pro hac vice*
Mark L. McGuire, *pro hac vice*
**GROTEFELD HOFFMANN**
311 S. Wacker Dr, St. 1500
Chicago, Illinois 60606
advorak@ghlaw-llp.com
egaddipati@ghlaw-llp.com
mmcguire@ghlaw-llp.com

Jonathan J. Tofilon, *pro hac vice*
**GROTEFELD HOFFMANN**
407 S. Third St., Ste. 200
Geneva, IL 60134
jtofilon@ghlaw-llp.com

/s/ Matthew J. Evans

Matthew J. Evans
BPR #017973
Michael A. Johnson
BPR #030210

15

**KAY GRIFFIN, PLLC**
900 S. Gay Street, Suite 802
Knoxville, Tennessee 37902
Matthew.evans@kaygriffin.com

*Attorneys for Plaintiffs, State Farm Fire & Casualty Company, State Farm Indemnity Company, State Farm Guaranty Insurance Company, State Farm Mutual Automobile Insurance Company, Lexington Insurance Company, AIG Property Casualty Company, Safeco Insurance Company of America, Safeco Lloyds Insurance Company, Safeco National Insurance Company, First National Insurance Company of America, General Insurance Company of America, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, the Cincinnati Insurance Company, the Cincinnati Casualty Company, the Cincinnati Indemnity Company, Country Mutual Insurance Company, Country Casualty Insurance Company, Philadelphia Indemnity Company, Granite State Insurance Company, Illinois National Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property and Casualty Insurance Company, Encompass Indemnity Company and Encompass Insurance Company of America*

/s/ *Kurt Rozelsky w/permission by MJE*
**KURT ROZELSKY**
SC Bar 6856, admitted *pro hac vice*
Email: krozelsky@spencerfane.com
**TERENCE M. RIDLEY**
Colorado Bar No. 15212, admitted *pro hac vice*
Email: tridley@spencerfane.com
**EVAN B. STEPHENSON**
Colorado Bar No. 37183, admitted *pro hac vice*
Email: estephenson@spencerfane.com
**SPENCER FANE LLP**
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: 303.839.3800
Facsimile: 303.839-3838

**PARKS T. CHASTAIN**
Registration No. 13744
Direct: 615.630.7717
Telephone: 615.256.8787, Ext. 114
Email: pchastain@bkblaw.com

**CORY R. MILLER**
Registration No. 34770
Direct: 615.630.7745
Telephone: 615.256.8787, Ext. 145
Email: cmiller@bkblaw.com
**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
545 Mainstream Drive, Suite 101
Nashville, TN 37228

*Attorneys for Plaintiff Auto-Owners Ins. Co.*

## **CERTIFICATE OF SERVICE**

      I do hereby certify that a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF"). Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt.

      This 26th day of July, 2022.

      /s/ Matthew J. Evans